**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-10868 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| OPIANT PHARMACEUTICALS, INC., ANN | : **SECURITIES EXCHANGE ACT OF** |
| MACDOUGALL, J.D., CRAIG COLLARD, | : **1934** |
| GABRIELLE A. SILVER, M.D., MICHAEL | : |
| SINCLAIR, M.D., RICHARD J. DALY, | : **JURY TRIAL DEMANDED** |
| ROGER CRYSTAL, M.D., THOMAS T. | : |
| THOMAS, LORIANNE MASUOKA, M.D., | : |
| | : |
| Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Opiant Pharmaceuticals Inc. ("Opiant or the "Company") and the members Opiant's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Opiant by affiliates of Indivior Corporation ("Indivior").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on December 21, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Olive Acquisition Subsidiary, Inc. ("Merger Sub"), a wholly-owned subsidiary of Indivior, will merge with and into Opiant with Opiant surviving as a wholly-owned subsidiary of Indivior (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on November 13, 2022 (the "Merger Agreement"), each Opiant stockholder will receive: (i) $20.00 in cash, and (ii) one contingent value right ("CVR") representing four contingent cash payments with an aggregate maximum amount payable of $8.00, if certain milestone related to the net sales of certain products are achieved (the "Merger Consideration"), for each Opiant share owned.

3. As discussed below, Defendants have asked Opiant's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Opiant's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Opiant stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Ann MacDougall, J.D. has served as a member of the Board since May 2016.

11. Individual Defendant Craig Collard has served as a member of the Board since October 2018.

12. Individual Defendant Gabrielle A. Silver, M.D. has served as a member of the Board since May 2016.

13. Individual Defendant Michael Sinclair, M.D. has served as a member of the Board since November 2010.

14. Individual Defendant Richard J. Daly has served as a member of the Board since June 2018.

15. Individual Defendant Roger Crystal, M.D. has served as a member of the Board since September 2009 and is the Company's President and Chief Executive Officer.

16. Individual Defendant Thomas T. Thomas has served as a member of the Board since November 2016.

17. Individual Defendant Lorianne Masuoka has served as a member of the Board since March 2021.

18. Defendant Opiant is a Delaware corporation and maintains its principal offices at 233 Wilshire Boulevard, Suite 400, Santa Monica, California 90401. The Company's stock trades on the NASDAQ Capital Market under the symbol "OPNT."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

21. Opiant a specialty pharmaceutical company, develops medicines for addictions and drug overdose. The Company offers NARCAN nasal spray, a treatment to reverse opioid overdoses. Its pipeline of product candidates includes medicines for the treatment for opioid overdose reversal; alcohol use disorders; acute cannabinoid overdose; and opioid use disorders. The Company was formerly known as Lightlake Therapeutics Inc. and changed its name to Opiant Pharmaceuticals, Inc. in January 2016. Opiant was incorporated in 2005 and is headquartered in Santa Monica, California.

22. On November 14, 2022, the Company announced the Proposed Transaction:

SANTA MONICA, Calif., Nov. 14, 2022 (GLOBE NEWSWIRE) -- Opiant Pharmaceuticals Inc. (NASDAQ: OPNT) today announced that it has entered into a definitive merger agreement to be acquired by Indivior Inc, a subsidiary of Indivior PLC (LON: INDV). Under the terms of the agreement, Indivior will acquire all of the outstanding shares of Opiant for upfront consideration of $20.00 per share in cash at closing, plus contingent value rights (CVRs) representing, if achieved, potential additional payments over a period of seven years of up to $8.00 per share. Achievement of the CVR payments, if any, are based on attaining certain revenue thresholds for OPNT003, nasal nalmefene, Opiant's investigational treatment for opioid overdose, as detailed below.

The upfront payment at closing of $20.00 per share represents a premium of approximately 111% to Opiant's closing share price on November 11, 2022, and 99% premium to the 30-day volume-weighted average share price. Inclusive of each of the CVR payments, the total potential transaction value represents a premium of up to 195% and 178%, respectively. The transaction has been unanimously approved by the Boards of Directors of each company.

"We are pleased to have reached an agreement that reflects the great potential Opiant has created with OPNT003 and our pipeline of medicines," said Roger Crystal, M.D., Opiant President and Chief Executive Officer. "This transaction provides Opiant shareholders with immediate value in addition to the potential future upside from the CVRs. This transaction will also enable us to leverage Indivior's commercial strength and resources to maximize the value of OPNT003 and our pipeline assets. Importantly, I want to thank our talented team, who have worked tirelessly to progress our Company to this point and look forward to the achievements still to come."

"Our work has never been more critical, with reported overdose deaths in the United States occurring at near record numbers," said Mark Crossley, Chief Executive Officer of Indivior. "Opiant's portfolio of product candidates is an excellent strategic fit that diversifies and strengthens our offerings, while Indivior's strong commercial capabilities will propel a combined product pipeline with the potential to help patients along a continuum from addiction and rescue to recovery. We look forward to working with Opiant's talented team as we undertake our shared mission of helping people with substance use disorders."

**Transaction Details**

>Under the terms of the merger agreement, Indivior will acquire all outstanding shares of Opiant for upfront consideration of $20.00 per share in cash, plus up to $8.00 per share in CVRs that may become payable if certain net revenue milestones are achieved by Opiant's lead asset OPNT003 over the applicable seven-year period.
>
>Pursuant to the CVRs, Indivior will pay $2.00 per CVR if OPNT003 achieves the following net revenue thresholds during any period of four consecutive quarters prior to the seventh anniversary of the U.S. commercial launch: (i) $225 million, (ii) $300 million, and (iii) $325 million. The remaining $2.00 per CVR will become payable if OPNT003 achieves net revenue of $250 million during any period of four consecutive quarters prior to the third anniversary of the U.S. commercial launch. There can be no guarantee that the CVR payments will be achieved as the future performance of OPNT003 is subject to several risks and uncertainties.
>
>The transaction is subject to customary closing conditions, including U.S. antitrust clearance, clearance by the Committee on Foreign Investment in the United States (CFIUS) and receipt of approval of Opiant's shareholders. The members of the Board of Directors of Opiant, who hold approximately 4.5% of the outstanding Opiant shares, have entered into a voting agreement with Indivior and agreed to vote their shares in favor of the transaction. Pending approvals, the parties anticipate completing the transaction in the first quarter of 2023.
>
> * * *
>
>**Advisors**
>Lazard Frères & Co. LLC is serving as financial advisor to Opiant and Latham & Watkins LLP is serving as legal advisor to Opiant.
>
> * * *

23.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Opiant's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Proxy Statement**

24.    On November 23, 2022, Opiant filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.    The Proxy Statement fails to provide material information concerning financial projections by Opiant management and relied upon by Lazard in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Lazard with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Opiant management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). In the case of Unlevered Free Cash Flow, the Proxy Statement also fails to disclose the definition of or formula to calculate the metric

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

30. With respect to Lazard's *Analysis of Consideration*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate of 12.5%; (ii) Lazard's estimate of Opiant's cost of capital.

31. With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the terminal growth rate ranging from -25% to -15%; (ii) the inputs and assumptions underlying the use of the range discount rates of 11.5% to 13.5%; and (iii) the number of fully diluted outstanding shares of Opiant.

32. With respect to Lazard's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

33. With respect to Lazard's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected for the analysis.

34. With respect to Lazard's *Premia Paid Analysis*, the Proxy Statement fails to disclose the premia paid in each of the selected transactions.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Opiant within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Opiant, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of Opiant, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Opiant, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 23, 2022                    **MELWANI & CHAN LLP**

                                                                    By:  */s/ Gloria Kui Melwani*

_____
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*
